# Exhibit "A"

**ASSET PURCHASE AGREEMENT**

**dated as of**

**September 26, 2016**

**by and among**

**MACELLERIA RESTAURANT, INC.**

**And**

**THE MEATPACKERS INC.**

**(and/or its designees)**

## **ASSET PURCHASE AGREEMENT**

ASSET PURCHASE AGREEMENT, dated as of September 26, 2016, is made by and among and Macelleria Restaurant, Inc. ("**Seller**" or "**Debtor**"), a debtor in the Chapter 11 case (the "**Bankruptcy Case**") styled *In re Macelleria Restaurant, Inc.*, case number 16-12110(MKV), pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") and The Meatpackers Inc. or its designee ("**Purchaser**").

WHEREAS, the Seller is in the business of owning an uncompleted and non-operating restaurant located at 1-3 Little West 12th Street, New York, New York 10014 with the trade name "Macelleria";

WHEREAS, on July 25, 2016 (the "**Filing Date**"), Seller filed a voluntary petition with the Bankruptcy Court under Chapter 11 of Title 11 of the United States Code, Section 101, et seq. (the "**Bankruptcy Code**"); and

WHEREAS, Seller desires to sell certain of the Seller's assets to Purchaser, and Purchaser desires to purchase certain of the assets of the Seller upon the terms and subject to the conditions set forth herein;

NOW, THEREFORE, IN CONSIDERATION OF THE FOREGOING, OF THE REPRESENTATIONS, WARRANTIES, COVENANTS AND MUTUAL AGREEMENTS HEREINAFTER CONTAINED, AND OF OTHER GOOD AND VALUABLE CONSIDERATION, RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, THE PARTIES AGREE AS FOLLOWS:

## **ARTICLE I**
## **DEFINITIONS**

The terms defined in this **Article I**, whenever used herein (including without limitation the Exhibits and Schedules hereto), shall have the following meanings for all purposes of this Agreement:

"**Agreement**" means this agreement among the parties set forth on the first page hereof, including, without limitation, all Exhibits and Schedules hereto, as the same may be amended from time to time.

"**Bankruptcy Case**" has the meaning given to it in the recitals hereto.

"**Bankruptcy Code**" has the meaning given to it in the recitals hereto.

"**Bankruptcy Court**" has the meaning given to it in the recitals hereto.

""**Business**" has the meaning given to it in the recitals hereto.

"**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banks in New York City are required or authorized by law to be closed.

1

"**Closing**" means the closing of the transactions contemplated by this Agreement.

"**Closing Date**" means the date on which the conditions set forth in **Article VII** are satisfied or waived, or such other date as the parties may mutually agree, upon which the Closing takes place.

"**Consent**" means any consent, approval, authorization, license or order of, registration, declaration or filing with, or notice to, or waiver from, any federal, state, local, foreign or other Governmental Entity or any other Person, including, without limitation, any security holder or creditor which is necessary to be obtained, made or given in connection with the execution and delivery of this Agreement and/or any Operative Document, the performance by a Person of its obligations hereunder and/or thereunder and the consummation of the transactions contemplated hereby and/or thereby.

"**Deposit**" has the meaning set forth in **Section 2.5** hereof.

"**Encumbrances**" means collectively, any and all security interests, liens, pledges, claims, levies, charges, escrows, encumbrances, options, rights of first refusal, transfer restrictions, conditional sale contracts, title retention contracts, mortgages, hypothecations, indentures, security agreements or other agreements, arrangements, contracts, commitments, understandings or obligations of any kind whatsoever, whether written or oral.

"**Excluded Assets**" has the meaning set forth in **Section 2.2** hereof.

"**Filing Date**" has the meaning given to it in the recitals hereto.

"**Final Order**" has the meaning set forth in **Section 6.1(d)** hereof.

"**Governmental Entity**" means any federal, state, local or foreign government, political subdivision, legislature, court, agency, department, bureau, commission or other governmental regulatory authority, body or instrumentality, including any industry or other non-governmental self-regulatory organizations.

"**Instruments of Assignment**" has the meaning given to it in **Section 2.6** hereof.

"**Landlord**" means West Village, LLC, the Landlord for the Leased Premises.

"**Lease**" means that certain non-residential real property Lease, dated June 12, 2015 by and between West Village LLC, as landlord ("**Landlord**") and Sugar Factory American Brasserie Meatpacking, LLC, which lease was assigned to the Debtor pursuant to an Assumption and Assignment of Lease, dated May 11, 2015 by and between Sugar Factory American Brasserie Meatpacking, LLC and the Debtor, for the Leased Premises.

"**Leased Premises**" means 1-3 Little West 12th Street, New York, New York 10014.

2

"**Permits**" means all licenses, certificates of authority, permits, orders, consents, approvals, registrations, local siting approvals, authorizations, qualifications and filings under any federal, state or local laws or with any Governmental Entities or other private Persons.

"**Person**" means an individual, corporation, partnership, limited liability company, firm, joint venture, association, joint stock company, trust, unincorporated organization or other entity, or any Governmental Entity or quasi-governmental body or regulatory authority.

"**Purchase Price**" has the meaning set forth in **Section 2.3** hereof.

"**Purchased Assets**" has the meaning set forth in **Section 2.1** hereof.

"**Sale Approval Order**" has the meaning set forth in **Section 5.4(d)** hereof.

"**Sale Hearing**" has the meaning set forth in **Section 5.4(c)** hereof.

"**Seller**" has the meaning given to it in the recitals hereto.

## ARTICLE II
## SALE AND PURCHASE OF ASSETS; CLOSING

2.1    Asset Purchase.  Upon the terms and subject to the conditions hereof, and upon the basis of the agreements, representations and warranties contained in this Agreement, on the Closing Date, the Seller agrees to sell, transfer, assign, convey and deliver to Purchaser, and Purchaser shall purchase, acquire and accept from the Seller, all of the Debtor's right, title and interest in and to the following assets, as and to the extent existing on the Closing Date (such assets, properties and rights are hereinafter collectively referred to as the "**Purchased Assets**"), free and clear of all Encumbrances.  Subject to, but without limitation of the foregoing, the Purchased Assets include the following as and to the extent existing on the Closing Date:`

(a)    Lease.  All of Seller's right, title and interest in and to that certain real property lease, as amended from time to time (the "**Lease**"), for the premises known as 1-3 Little West 12th Street, New York, New York (the "**Leased Premises**"), together with all

3

improvements made to the Premises. The Lease shall be assumed by the Debtor and assigned to Purchaser pursuant to section 365 of the Bankruptcy Code.

(b) <u>Security Deposit</u>. The security deposit in the approximate amount of $171,000 held by the Landlord for the Leased Premises, subject to verification and written acknowledgement by the Landlord of the amount of the security deposit held on the Closing Date.

(c) <u>Permits</u>. All of the Debtor's rights, title and interest in and to any and all Permits, licenses, approvals and authorizations by a federal, state, local or foreign governmental or non-governmental board, bureau, agency or regulatory body, to the extent transferable or assignable;

2.2   <u>Excluded Assets</u>.   Any provision of this Agreement to the contrary notwithstanding, Purchaser shall not acquire and there shall be excluded from the Purchased Assets the following (the "**<u>Excluded Assets</u>**"):

(a) <u>Claims Under</u>

4

<u>Agreement</u>. All claims against Purchaser arising under or in connection with this Agreement;

(b)    <u>C</u><u>ash</u>. All cash and cash equivalents of the Debtor;

(c)    <u>R</u><u>eceivables</u>. All of the Seller's trade accounts, notes and other receivables;

(d)    <u>C</u><u>ontracts</u>. All contracts, leases or other agreements, other than the Lease;

(e)    <u>I</u><u>nventory</u>. All raw materials, work-in-process, finished goods and merchandise, packaging materials and other supplies related thereto which are owned or used by the Debtor;

(f)    <u>I</u><u>nsurance</u>. All rights of the Debtor under insurance policies;

(g)    <u>B</u><u>ank Accounts</u>. All rights with respect to the Debtor's bank accounts; and

5

(h)    <u>Bankruptcy Causes of Action</u>. All preference, fraudulent transfer and/or other avoidance claims and actions of any kind of the Seller, including, without limitation, any such claims and actions arising under Sections 544, 545, 547, 548 549, 550 and 551 of the Bankruptcy Code; and

(i)    <u>Books and Records</u>. All of Seller's books and records, computers, files and data.

2.3    Consideration. The aggregate consideration for the Assets (the "**Purchase Price**") shall be the amount of One Million One Hundred Thousand Dollars ($1,100,000) payable at Closing, inclusive of the Deposit in paragraph 2.5, below. No consideration other than the Purchase Price shall be paid, it being the express understanding of the parties that all defaults under the Lease will be cured at Closing from the Purchase Price.

2.4    No Assumed Liabilities. Purchaser shall not assume or be responsible for, and shall in no event be liable for any debts, liabilities or obligations of the Seller, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, material or immaterial, absolute or contingent, matured or unmatured, determinable or undeterminable, direct or indirect, secured or unsecured, or otherwise.

2.5    Deposit. As of the date hereof, Purchaser has delivered to Seller a deposit (together with any interest accrued thereon, the "**Deposit**") in the amount of One Hundred Ten Thousand Dollars ($110,000) to be held in accordance with the terms of this Agreement and applied to the Purchase Price at Closing. In the event of termination of this Agreement, the Deposit shall be disbursed as provided in **Section 7.2.**

2.6    Transfer of Assets. At the Closing, the Seller shall effect the sale, conveyance, assignment, transfer and delivery of the Purchased Assets to Purchaser by delivering to Purchaser or its designee documents of assignment and transfer as are reasonably necessary to vest in Purchaser good and valid title to the Purchased Assets, free and clear of all Encumbrances, in form and substance reasonably acceptable to the parties, collectively, the "**Instruments of Assignment**".

2.7    Possession. Right to possession of the Purchased Assets shall transfer to Purchaser on the Closing Date. Seller shall transfer and deliver to Purchaser on the Closing Date such keys, lock and safe combinations and other similar items as Purchaser shall require to obtain immediate and full occupation and control of the Purchased Assets, including, without limitation, the Leased Premises, and shall also make available to Purchaser at the Leased Premises all documents in Seller's possession that are required to be transferred to Purchaser by this Agreement.

2.8    Transfer Taxes. Purchaser shall be solely responsible for the payment of any and all such transfer, stamp or similar taxes which may be payable by reason of the transaction contemplated in this Agreement and any and all claims, charges, interest or penalties assessed, imposed or asserted in relation to any such taxes.

Non-Assignable Permits.

(a)    To the extent that any Permit included among the Purchased Assets is not capable of being assigned to Purchaser at the Closing without the Consent of the issuer thereof, or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any applicable federal, state, local or foreign law, statute, ordinance, rule, regulation, order, judgment or decree, administrative order or decree, administrative or judicial decision, and any other executive or legislative proclamation ("**Laws**"), neither this Agreement nor any Instrument of Assignment shall constitute an assignment thereof, or an attempted assignment, unless such Consent has been obtained.

2.9    The Closing.    The Closing shall take place at 10:00 a.m., prevailing Eastern time, on the Closing Date, at the offices of DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, One North Lexington Avenue, 11th Floor, White Plains, New York 10601, no later than ten (10) days after entry of the Sale Approval Order, subject to the satisfaction or waiver of all of the conditions to Closing set forth in **Article VI** hereof.    At the Closing, Purchaser and the Seller shall deliver or cause to be delivered the items necessary to convey, assign, transfer and deliver the Purchased Assets to Purchaser.

8

2.10    Deliveries by Seller.  At the Closing, the Seller shall deliver, or cause to be delivered, to Purchaser each of the following, duly executed by or on behalf of Seller:

(a)    the Instruments of Assignment referred to in **Section 2.6** hereof; and

(b)    a copy of the Sale Approval Order referred to in **Section 5.4(d)** hereof.

2.11    Deliveries by Purchaser.  At the Closing, Purchaser shall deliver or cause to be delivered to the Seller each of the following, duly executed by or on behalf of Purchaser:

(a)    an amount equal to the Purchase Price by wire transfer to Seller's attorney's escrow account of immediately available funds to the account or accounts designated in writing by the Seller at least two (2) Business Days prior to the Closing Date;

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to Purchaser as follows:

3.1    Assets "As Is, Where Is."    THE ASSETS BEING SOLD ARE BEING SOLD ON AN "AS-IS, WHERE-IS" BASIS AND WITH NO EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS, STATEMENT OF CONDITION OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR THE LIKE.

9

3.2    Organization and Qualification.   To the knowledge of the Seller, the Debtor is duly organized, validly existing and in good standing in the state of New York, with all necessary corporate power and authority to own, lease and operate the Purchased Assets and carry on its business as presently owned or conducted.

3.3    Powers; Consents; No Breach .  The execution, delivery, and performance of this Agreement by Seller and the consummation of the transactions contemplated hereby by Seller:  (a) are within its corporate powers, are not in contravention of the terms of the certificate of incorporation or bylaws of Seller, and have been duly authorized by all appropriate corporate action;  (b) do not and will not require any approval or consent of, or filing with, any governmental agency or authority;  (c) do not and will not violate any statute, law, rule, or regulation to which Seller may be subject;  (d) do not and will not conflict with, or result in a breach of or a default under (with or without notice or lapse of time, or both), any contract, agreement, indenture, mortgage, deed of trust, lease, or other instrument to which Seller is a party or by which Seller is bound or subject; and (e) do not and will not violate any judgment, order, or decree of any court or other governmental agency or authority to which Seller may be subject.  This Agreement has been duly executed and delivered by Seller and constitutes a valid and binding obligation of Seller, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, and similar laws affecting creditors' rights and remedies generally and general principles of equity.

3.4    Litigation or Proceedings.   Other than the Bankruptcy Case, there is no litigation or other proceeding pending or, to the knowledge of Seller or its directors, managers, officers, employees, agents, or representatives, threatened against Purchaser that could reasonably be expected to affect adversely Purchaser's ability to consummate the transactions contemplated by this Agreement.

3.5    Brokers and Advisors.   Purchaser represents and warrants to Seller that, other than as disclosed below, it has not dealt or negotiated with, or engaged on its own behalf or for its benefit, any broker, finder, consultant, advisor, or professional in the capacity of a broker or finder (each a "Broker") in connection with this Agreement or the transactions contemplated hereby. Purchaser hereby agrees to indemnify, defend and hold Seller harmless from and against any and all claims, demands, causes of action, losses, costs and expenses (including reasonable attorneys' fees, court costs and disbursements) arising from any claim for commission, fees or other compensation or reimbursement for expenses made by Broker engaged by or claiming to have dealt with Purchaser in connection with this Agreement or the transactions contemplated hereby.  Seller represents and warrants to Purchaser that it has not dealt or negotiated with, or engaged on its own behalf or for its benefit, any Broker (other than Paul Fetscher of Great American Brokerage Inc. and Jean Bates of co-broker Capital Real Estate Advisors) in connection with this Agreement or the transactions contemplated hereby.  Seller hereby agrees to indemnify, defend and hold Purchaser and its direct and indirect shareholders, officers, directors, partners, principals, members, employees, agents, contractors and any successors or assigns of the foregoing, harmless from and against any and all claims, demands, causes of action, losses, costs and expenses (including reasonable attorneys' fees, court costs and disbursements) arising from any claim for commission, fees or other compensation or reimbursement for expenses made

by any Broker, engaged by or claiming to have dealt with Seller in connection with this Agreement or the transactions contemplated hereby. The provisions of this Section 3.5 shall survive the termination of this Agreement or the Closing.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

Purchaser hereby represents and warrants to the Seller as follows:

4.1    Organization and Qualification.  To the knowledge of the Purchaser, the Purchaser is duly organized, validly existing and in good standing in the state of New York, with all necessary corporate power and authority to own, lease and operate the Purchased Assets and carry on its business as presently owned or conducted.

4.2    Powers; Consents; No Breach.  The execution, delivery, and performance of this Agreement by Purchaser and the consummation of the transactions contemplated hereby by Purchaser:  (a) are within its corporate powers, are not in contravention of the terms of the certificate of incorporation or bylaws of Purchaser, and have been duly authorized by all appropriate corporate action; (b) do not and will not require any approval or consent of, or filing with, any governmental agency or authority; (c) do not and will not violate any statute, law, rule, or regulation to which Purchaser may be subject; (d) do not and will not conflict with, or result in a breach of or a default under (with or without notice or lapse of time, or both), any contract, agreement, indenture, mortgage, deed of trust, lease, or other instrument to which Purchaser is a party or by which Purchaser is bound or subject; and (e) do not and will not violate any judgment, order, or decree of any court or other governmental agency or authority to which Purchaser may be subject.  This Agreement has been duly executed and delivered by Purchaser and constitutes a valid and binding obligation of Purchaser, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, and similar laws affecting creditors' rights and remedies generally and general principles of equity.

4.3    Litigation or Proceedings.  There is no litigation or other proceeding pending or, to the knowledge of Purchaser or it directors, managers, officers, employees, agents, or representatives, threatened against Purchaser that could reasonably be expected to affect adversely Purchaser's ability to consummate the transactions contemplated by this Agreement.

4.4    Financial Capability.  Purchaser has cash, or the ability to obtain cash by means of credit facilities with financially responsible third parties, in an amount sufficient to enable it to perform all of its obligations hereunder, including, without limitation, payment of the Purchase Price and future performance under the Lease.

# ARTICLE V
# COVENANTS

5.1  <u>Conduct of Business of the Debtor</u>.  From the date hereof and until the Closing Date, except as contemplated by this Agreement or expressly consented to by an instrument in writing signed by Purchaser, the Seller shall:  (i) maintain and preserve the Purchased Assets in good repair, order and condition, including, without limitation, performing, in a manner and on a basis consistent with past practice, all periodic maintenance, (ii) preserve its business operations and organizations intact, (iii) keep available the services of its current officers, and (iv) preserve its current advantageous business relationships, including, without limitation, the goodwill of its customers and suppliers and others having business relationships with it.

5.2  <u>Seller's Records</u>.  Prior to the Closing Date, Seller shall afford Purchaser, its attorneys, accountants and representatives, free and full access to the Seller' business, books, records and employees, and shall provide to Purchaser and its representatives such additional financial and operating data and other information as Purchaser shall from time to time reasonably request upon advance written notice.

5.3  <u>Further Assurances</u>.  Simultaneous with the Closing, Seller shall take such steps as may be necessary to put Purchaser in actual possession and operating control of the Purchased Assets.  At or after the Closing, Seller shall, at the reasonable request of Purchaser, without further consideration, promptly execute and deliver, or cause to be executed and delivered, to Purchaser such assignments, bills of sale, consents and other instruments in addition to those required by this Agreement, in form and substance reasonably satisfactory to Purchaser, and take all such other actions as Purchaser may reasonably deem necessary to implement any provision of this Agreement and to transfer to and vest in Purchaser title to, and to put Purchaser in possession of, all of the Purchased Assets, free and clear of any and all Encumbrances.

5.4  <u>Bankruptcy Covenants</u>.

(a)  <u>C ure of Defaults</u>.  Seller shall at the Closing from the Initial Payment, cure any and all defaults and breaches and satisfy any liability or obligation arising from or relating to pre-Closing periods under the Lease, so that the Lease may be assigned by Seller to Purchaser

12

in accordance with the provisions of Section 365 of the Bankruptcy Code, the Sale Approval Order, any other orders of the Bankruptcy Court effectuating such assignments, and this Agreement.

(b)    <u>M otions, Orders, etc.</u> Seller shall promptly provide Purchaser with the proposed final drafts of all documents, motions, orders, or pleadings that Seller proposes to file with the Bankruptcy Court which relate to the approval of this Agreement, the Purchased Assets, or the consummation of the transactions contemplated hereby, or any provision therein or herein, and shall provide Purchaser and its counsel with a reasonable opportunity to review and comment on such documents, motions, orders, or pleadings.

(c)    <u>S ale Approval Order</u>. The sale approval order (the "**Sale Approval Order**"),

13

shall be reasonably acceptable in form and substance to Purchaser and shall include provisions, among other things (i) providing that Purchaser shall not incur any liability as a successor to the Debtor, (ii) approving the sale of the Purchased Assets to Purchaser on the terms and conditions set forth in this Agreement and authorizing Seller to proceed with this transaction, (iii) stating that any objections timely filed with respect to the sale of the Purchased Assets, which have not been withdrawn, are overruled or the interests of such objections have been otherwise satisfied or adequately provided for by the Bankruptcy Court, (iv) finding that the Purchase Price represents fair value for the Purchased Assets, (v) finding that the sale is in the best interests of Debtor's estate and creditors, (vi) finding that Purchaser is a good faith purchaser of the Assets under Section 363(m) of the Bankruptcy Code and

14

that the provisions of Section 363(n) of the Bankruptcy Code have not been violated, (vii) providing that the sale of the Purchased Assets to Purchaser shall be free and clear of all liens, claims, interests, obligations and encumbrances whatsoever under Section 363 of the Bankruptcy Code and any other applicable sections of the Bankruptcy Code, (viii) providing that the Bankruptcy Court shall retain jurisdiction for the purpose of enforcing the provisions of the Sale Approval Order including, without limitation, compelling delivery of the Purchased Assets to Purchaser and protecting Purchaser against any liens, claims, interests, obligations and encumbrances against Seller or the Purchased Assets, (ix) finding that there are no brokers other than the Debtor's broker, Great American Brokerage, Inc. and co-broker Capital Real Estate Advisors, and any commissions due Great American

15

Brokerage, Inc. and Capital Real Estate Advisors are solely the responsibility of the Debtor, (x) authorizing and directing Seller to execute, deliver, perform under, consummate and implement this Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the foregoing, and (xi) determining that Purchaser is not a successor to Seller or otherwise liable for any of the Excluded Liabilities or Excluded Assets and permanently enjoining each and every holder of any of the Excluded Liabilities or Excluded Assets from commencing, continuing or otherwise pursuing or enforcing any remedy, claim, cause of action or encumbrance against Purchaser or the Purchased Assets related thereto. Seller shall use its best efforts to obtain entry of the Sale Approval Order. Purchaser's obligations to consummate the

transactions contemplated herein shall be conditioned upon the Bankruptcy Court's entry of the Sale Approval Order in form and substance satisfactory to Purchaser. To the extent that there is any inconsistency between this paragraph and the Sale Approval Order, the Sale Approval Order shall govern.

(d)    Assumption and Assignment of Lease. Seller shall obtain an order or orders (which may include the Sale Approval Order) in a form reasonably satisfactory to Purchaser, among other things (i) approving the assumption and assignment of the Lease to Purchaser pursuant to, and subject to the provisions of, Section 365 of the Bankruptcy Code, (ii) providing that all defaults of Seller under the Lease arising or accruing prior to the date of the Closing (without giving effect to any acceleration clauses or any default provisions in such contracts of a

17

kind specified in Section 365(b)(2) of the Bankruptcy Code) have been cured or will be cured at the Closing by Seller from the Initial Payment so that Purchaser shall have no liability or obligation with respect to any default or obligation arising or accruing prior to the Closing or in respect of any cure obligations, and (iii) providing that the Lease shall be transferred to, and remain in full force and effect for the benefit of, Purchaser, notwithstanding any provision in the Lease (including those described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or limits in any way such assignment or transfer.

(e)    O ther Bankruptcy Covenants. Seller shall promptly make any filings, take all actions, and use his best efforts to obtain any and all other approvals and orders necessary or appropriate for consummation of the sale of the Purchased

18

Assets, subject to their obligations to comply with any order of the Bankruptcy Court. In the event an appeal is taken, or a stay pending appeal is requested, from any of the foregoing orders of the Bankruptcy Court, Seller shall immediately notify Purchaser of such appeal or stay request and, upon Purchaser's request, shall provide to Purchaser within two days after Seller' receipt thereof a copy of the related notice of appeal or order of stay. Seller shall also provide Purchaser with written notice of any motion, application, brief or other pleading filed in connection with any appeal from any of such orders.

(f)     No Adverse Litigation. At the time of Closing, there shall be no pending litigation against the Seller which would adversely affect Seller's ability to deliver free and clear title to the Purchased Assets and Lease, respectively.

## ARTICLE VI
## CONDITIONS TO CLOSING

6.1     Conditions Precedent to Obligations of Purchaser.    The obligation of Purchaser under this Agreement to consummate the transactions contemplated by this Agreement on the Closing Date shall be subject to the satisfaction, at or prior to the Closing Date, of all of the following conditions, any one or more of which may be waived by Purchaser:

(a)     R epresentations and

19

Warranties Accurate. The representations and warranties of the Seller contained in this Agreement shall be true and correct in all respects as of the date of this Agreement and as of the Closing Date with the same force and effect as though made on and as of the Closing Date.

(b)    Performance by the Seller.  The Seller shall have performed and complied in all material respects with all covenants and agreements required to be performed or complied with by such Person hereunder on or prior to the Closing Date.

(c)    No Legal Prohibition. No suit, action, investigation, inquiry or other proceeding by any Governmental Entity or other Person shall have been instituted or threatened which arises out of or relates to this Agreement, or the transactions contemplated hereby and no injunction, order, decree or judgment shall have

20

been issued and be in effect or threatened to be issued by any Governmental Entity of competent jurisdiction, and no statute, rule or regulation shall have been enacted or promulgated by any Governmental Entity and be in effect, which in each case restrains or prohibits the consummation of the transactions contemplated hereby.

(d)    Entry of Order; Appeal. The Bankruptcy Court shall have entered the), the Sale Approval Order in accordance with **Section 5.4(c)**, and any other order in accordance with **Section 6.5(e)** relating to the assignment of the Lease, all in form and substance reasonably acceptable to Purchaser, and the Sale Approval Order and any other order in accordance with **Section 5.5(e)** relating to the assignment of the Lease, shall not have been stayed, and shall have become a Final Order, unless the finality of the Sale Approval Order is waived by the

Bankruptcy Court or Purchaser.  The term "**Final Order**" as used in this Agreement shall mean an order, judgment or other decree, the operation or effect of which has not been reversed, stayed, modified or amended.

6.2     Conditions Precedent to Obligations of the Seller.  The obligations of the Seller under this Agreement to consummate the transactions contemplated by this Agreement on the Closing Date shall be subject to the satisfaction, at or prior to the Closing Date, of all of the following conditions, any one or more of which may be waived by the Seller:

(a)     Representations and Warranties Accurate. The representations and warranties of Purchaser contained in this Agreement shall be true and correct in all respects as of the date of this Agreement and as of the Closing Date with the same force and effect as though made on and as of the Closing Date. In the event that any of Seller's creditors assert claims arising out of Seller's pre-Closing activities against Purchaser post-Closing, Seller shall take such action as necessary to enforce the Sale Approval Order against such creditors of the Seller.

22

(b)     <u>Performance by Purchaser</u>.  Purchaser shall have performed and complied in all material respects with all covenants and agreements required to be performed or complied with by them hereunder on or prior to the Closing Date.

(c)     <u>No Legal Prohibition</u>. No suit, action, investigation, inquiry or other proceeding by any Governmental Entity or other Person shall have been instituted or threatened which arises out of or relates to this Agreement or the transactions contemplated hereby and no injunction, order, decree or judgment shall have been issued and be in effect or threatened to be issued by any Governmental Entity of competent jurisdiction, and no statute, rule or regulation shall have been enacted or promulgated by any Governmental Entity and be in effect, which in each case restrains or prohibits the consummation of the

23

transactions contemplated hereby.

(d)    Entry of Order; Appeal. The Sale Approval Order shall have been entered by the Bankruptcy Court and shall not have been stayed.  If an appeal of the Sale Approval Order is filed and Purchaser elects in its sole discretion to waive the condition to Closing that the Sale Approval Order shall be a Final Order, then Seller shall be obligated to proceed with the Closing notwithstanding the pendency of any such appeal, unless the Sale Approval Order is stayed.

# ARTICLE VII
# MISCELLANEOUS

7.1    Termination.  This Agreement may be terminated, and the transactions contemplated herein may be abandoned:

(a)    any time before the Closing, by mutual written agreement of the Seller and Purchaser;

(b)    any time before the Closing, by the Seller, on the one hand, or

24

Purchaser, on the other hand, (i) in the event of a material breach hereof by any non-terminating party if such non-terminating party fails to cure such breach within five (5) Business Days following notification thereof by the terminating party or (ii) upon notification to the non-terminating party by the terminating party that the satisfaction of any condition to the terminating party's obligations under this Agreement becomes impossible or impracticable with the use of commercially reasonable efforts if the failure of such condition to be satisfied is not caused by a breach hereof by the terminating party;

(c)    by Purchaser, upon five (5) Business Days' prior written notice to the Seller, if the Closing has not taken place by the 30th day following the date that the Sale Approval Order becomes a Final Order, other than by reason of a material breach of this

25

Agreement            by
Purchaser; or

The time periods for termination of this Agreement set forth in **Sections 7.1(b)** and **7.1(c)**
may be extended by mutual written agreement of the Seller and Purchaser without further order
of the Bankruptcy Court.

7.2      <u>Effect of Termination</u>.

(a)      If this Agreement is
validly terminated
pursuant to **Section
7.1**, this Agreement
will forthwith become
null and void, and
there will be no
liability or obligation
on the part of any party
(or any of their
respective officers,
directors, employees,
partners, agents or
other representatives
or Affiliates), except
as provided in the next
succeeding sentence
and except that the
provisions in **Sections
7.3** will continue to
apply following any
such termination.
Notwithstanding any
other provision in this
Agreement to the
contrary, upon
termination of this
Agreement pursuant to
**Sections 7.1(b)** or **(c)**,
the Seller will remain
liable to Purchaser for
any breach of this
Agreement by the
Seller existing at the
time of such

26

termination, and Purchaser will remain liable to the Seller for any breach of this Agreement by Purchaser existing at the time of such termination. Failure of any party to satisfy any of the conditions set forth in **Sections 6.1** or **6.2** of this Agreement shall not be deemed a breach of this Agreement by such party except to the extent that such failure also constitutes a breach of a representation, warranty or covenant.

(b) Notwithstanding the provisions of **Section 7.2(a)**, above:

(i)    if Purchaser or the Seller terminate this Agreement pursuant to **Section 7.1(a)** or **Section 7.1(b)(ii)**, Purchaser shall receive the prompt return of the Deposit;

(ii)    if Purchaser terminates this Agreement pursuant to **Section 7.1(b)(i)** or **Section 7.1(c)**, Purchaser shall receive the prompt return of the Deposit;

(iii)    if the Seller terminates this Agreement pursuant to **Section 7.1(b)(i),** the Seller shall receive, as its sole and exclusive remedy available under any Law, including the Bankruptcy Code, the Deposit; and

(iv)    if the Seller terminates this Agreement pursuant to **Section 7.1(c)**, Purchaser shall receive the prompt return of the Deposit.

7.3    <u>Expenses</u>.  Except as otherwise set forth herein, each party hereto shall pay its own expenses incurred in connection with this Agreement and the transactions contemplated hereby.

7.4    Amendment.  This Agreement may not be modified, amended, altered or supplemented except by a written agreement executed by Purchaser and the Seller.

7.5    Entire Agreement.    This Agreement, together with the Exhibits and Schedules hereto and the instruments and other documents delivered pursuant to this Agreement, contain the entire agreement of the parties relating to the subject matter hereof, and supersede all prior agreements, understandings, representations, warranties and covenants of any kind between the parties.  All others are specifically waived.

7.6    Waivers.  Waiver by any party of any breach of or failure to comply with any provision of this Agreement by the other party shall not be construed as, or constitute, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any other provision of this Agreement.  No waiver of any such breach or failure or of any term or condition of this Agreement shall be effective unless in a written notice signed by the waiving party and delivered, in the manner required for notices generally, to each affected party.

7.7    Notices.  All notices and other communications hereunder shall be validly given or made if in writing, (i) when delivered personally (by courier service or otherwise), (ii) when sent by telecopy, or (iii) when actually received if mailed by first-class certified or registered United States mail or recognized overnight courier service, postage-prepaid and return receipt requested, and all legal process with regard hereto shall be validly served when served in accordance with applicable law, in each case to the address of the party to receive such notice or other communication set forth below, or at such other address as any party hereto may from time to time advise the other parties pursuant to this Subsection:

If to the Seller:
      Macelleria Restaurant, Inc.
      P.O. Box 309
      New York, New York 10150-0309
      Telephone: []
      Telecopier: []
      Attention:    Violetta Bitici, President

with a copy to (which shall not constitute service):
      DelBello Donnellan Weingarten
      Wise & Wiederkehr LLP
      One North Lexington Avenue, 11th Floor
      White Plains, New York 10601
      Telephone: (914) 681-0200
      Telecopier: (914) 684-0288
      Attention:    Jonathan S. Pasternak, Esq.
              jsp@ddw-law.com

If to The Purchaser:
      The Meatpackers Inc.
      c/o BANYM, Inc.
      1270 Broadway, Suite 806
      New York, NY 10001
      Telephone: []
      Telecopier: []

with a copy to (which shall not constitute service):
      Nathaniel Muller, Esq.
      1270 Broadway, Suite 806
      New York, New York 10001
      Telephone:    (646) 256-6003
      Telecopier:    (212) 244-4232
      nm@legalmuller.com

7.8    <u>Counterparts</u>.    This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same document. Facsimile or electronic signatures shall have the same effect as original signatures.

7.9    <u>Governing Law</u>.  All disputes arising out of or related to this Agreement, including, without limitation, any dispute relating to the interpretation, meaning or effect of any provision hereof, will be resolved in the Bankruptcy Court and the parties hereto will each submit to the exclusive jurisdiction of the Bankruptcy Court for the purposes of adjudicating any such dispute, to the extent the jurisdiction of the Bankruptcy Court is applicable.  If the jurisdiction of the Bankruptcy Court is not applicable, any legal action, suit or proceeding arising

out of or relating to this Agreement, each and every agreement and instrument contemplated hereby or the transactions contemplated hereby and thereby shall be instituted in any Federal court of the Southern District of New York.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York (*i.e.*, without regard to its conflicts of law rules).

       7.10    <u>Binding Effect; Third Party Beneficiaries; Assignment</u>.  This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the parties hereto and their respective legal representatives, successors and permitted assigns.  Except as expressly set forth herein, nothing expressed or referred to in this Agreement is intended or shall by construed to give any Person other than the parties to this Agreement, or their respective legal representatives, successors and permitted assigns, any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision contained herein.  Neither party may assign this Agreement nor any of its rights hereunder, other than any right to payment of a liquidated sum, nor delegate any of its obligations hereunder, without the prior written consent of the other, except that Purchaser may assign its rights under this Agreement.

       7.11    <u>Severability</u>.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and any such provision, to the extent invalid or unenforceable, shall be replaced by a valid and enforceable provision which comes closest to the intention of the parties underlying such invalid or unenforceable provision.

       7.12    <u>Headings</u>.  The headings contained in this Agreement are for reference purposes only and shall not modify define, limit, expand or otherwise affect in any way the meaning or interpretation of this Agreement.

       7.13    <u>No Agency</u>.  No party hereto shall be deemed hereunder to be an agent of, or partner or joint venturer with, any other party hereto.

       7.14    <u>Public and Private Announcements</u>.  Prior to Closing, neither Purchaser nor Seller will issue or cause the publication of any press release or otherwise make any public and/or private statement with respect to the transactions contemplated hereby without the prior consent of the parties hereto, provided, that any party hereto may make a public and/or private announcement to the extent required by law, judicial process or the rules, or regulations.

       7.15    <u>Interpretation</u>.  In this Agreement, unless a contrary intention appears, (i) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision, and to any certificates delivered pursuant hereto; and (ii) reference to any Article or Section means such Article or Section hereof.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**SELLER:**

**MACELLERIA RESTAURANT, INC.**

By:    _/s/ Violetta Bitici, President_

**PURCHASER:**

**THE MEATPACKERS INC.**

By:    _/s/ Georges Vila, President_

31