UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

| | |
|---|---|
| | Chapter 11 |
| MACELLERIA RESTAURANT, INC., | Case No. 16-12110 (MKV) |

                                    Debtor.
-------------------------------------------------------------------X

### ORDER (I) AUTHORIZING THE SALE OF THE DEBTOR'S RESTAURANT AND RELATED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF THE DEBTOR'S NONRESIDENTIAL COMMERCIAL REAL PROPERTY LEASE IN CONNECTION THEREWITH, (III) GRANTING THE SUCCESSFUL BIDDER GOOD FAITH STATUS, (IV) WAIVING THE FOURTEEN DAY STAY OF SALE ORDER, AND (V) GRANTING RELATED RELIEF

Upon the motion of Macelleria Restaurant, Inc., debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case ("Chapter 11 Case"), by its attorneys, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP (the "Debtor's Counsel", seeking entry of an Order (i) approving the private sale (the "Sale") of substantially all of the Debtor's real and personal property (the "Restaurant"), as further defined in the Asset Purchase Agreement dated September 26, 2016 (the "APA") between the Debtor and The Meatpackers Inc. (the "Purchaser"); (ii) authorizing the assumption and assignment of the Debtor's nonresidential, commercial real property lease (the "Lease") in connection therewith [ECF No. 38] (the "Motion")[1]; and no opposition by West Village, LLC (the "Landlord"), the United States Trustee, or any other party in interest having been filed; and the Landlord having expressly stated on the record its support for the relief sought in the Motion, specifically to the sale and assumption and assignment of the lease; and the Court having conducted a hearing on the Motion on October 19, 2016 (the "Sale Hearing") at which Paul G. W. Fetscher of Great American Brokerage, Inc., the Debtor's retained broker [ECF No. 25] and Ms. Violetta Bitici, principal of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the APA.

the Debtor, appeared and were available for cross-examination; and all parties-in-interest having had the opportunity to be heard regarding the relief requested in the Motion; and the Court having reviewed and considered the Motion; upon the record of the Sale Hearing and this Chapter 11 Case, and after due deliberation thereon, and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.    This Court has jurisdiction over the Motion and the APA, the agreements contemplated thereby, and consummation of the transactions thereunder (the "Transactions") pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

B.    Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.    The statutory predicates for the relief sought in the Motion are Sections 105(a), 363(b), (f) and (m), 365, 503, and 507 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq., ("Bankruptcy Code"), and Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a) and (c), 9007 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

D.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings pursuant to Bankruptcy Rule 9014.

E.    Based on the affidavit of service [ECF No. 38, Exh. 3] and the representations of Debtor's Counsel, it appears that notice of the Motion and the Sale Hearing has been provided to:  (a) counsel to the Purchaser, (b) Richard Morrissey, Esq. of the Office of the United States Trustee, (c) the Debtor's secured creditors; (d) parties who filed notices of appearance; (e) all counter-parties to any executory contracts and leases with the Debtor, or their respective counsel;

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

(f) all parties and entities that previously expressed an interest in acquiring the Restaurant; and (g) all Creditors.

F.      Based upon the affidavit of service filed with the Court [ECF No. 38, Ex. 3] (i) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of this Chapter 11 Case and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, and (ii) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

G.      The Debtor has complied with the procedures for the assumption and assignment of the Lease.  Based upon the affidavit of service filed with the Court [ECF No. 38, Ex. 3], the Motion constituted (i) adequate and sufficient notice to the Landlord, including notice of the cure cost due under the Lease to be assumed and assigned to the Purchaser, under the circumstances of this Chapter 11 Case and these proceedings and complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, (ii) a reasonable opportunity to object and be heard with respect to the assumption and assignment of the Lease and the procedures for assumption and assignment of the Lease was afforded to the Landlord, and (iii) the Landlord has heretofore consented to the assumption and assignment of the Lease to the Purchaser subject to the terms and conditions of that certain Stipulation dated October 14, 2016, "So Ordered" by the Court on October 18, 2016, among the Debtor, the Purchaser and the Landlord (the "Assumption Stipulation") [ECF No. 43].

H.      No further or other notice beyond that described in the foregoing paragraphs E through G is required in connection with the Transactions.

I.      The Purchased Assets (as defined in the APA) that are to be transferred pursuant to the APA is property of the Debtor's estate and good, valid, and marketable title thereto is vested in the Debtor's estate.  The Debtor exclusively owns all right, title and interest to the Purchased Assets.  For the avoidance of doubt, and as set forth in the APA, the Purchased Assets do not include, and the Purchaser is not acquiring, any rights, title or interest in any Excluded

3

Assets or any other property or rights that are expressly excluded from the sale as set forth in the Motion or APA, respectively.

J.        As demonstrated by the representations of counsel to the Debtor on the record at the Sale Hearing, the Debtor and its professionals marketed the Purchased Assets and conducted the marketing and sale process as set forth in the Motion.  The Debtor specifically retained Great American Brokerage Inc. ("Great American") in this proceeding as its broker to assist the Debtor in identifying potential purchasers in marketing the Property.  The retention application for Great American [ECF Docket No. 25] established that Great American has extensive expertise and experience in the marketing of business assets in bankruptcy and other proceedings, including restaurants.  Based upon the record of these proceedings, all prospective purchasers have been afforded a reasonable and fair opportunity to acquire the Debtor's Assets.

K.        The record of these proceedings indicates that a private sale of the Debtor's assets is in the best interest of creditors and other stakeholders and will generate a better recovery for creditors and other stakeholders than the Debtor's alternatives.  The record indicates that absent the sale of the Debtor's assets pursuant to the APA, there is a substantial and imminent likelihood that the Debtor's assets would continue to decline in value and the Debtor could face rejection of the Lease.  The Debtor has determined, in a valid and sound exercise of its business judgment, that the offer of the Purchaser was the only pending offer for the Restaurant, and that the Purchaser's offer was the best offer the Debtor was able to procure under the circumstances.

L.        Subject to the entry of this Order, the Debtor (i) has full power and authority to execute the APA and all other documents contemplated thereby, (ii) has all of the power and authority necessary to consummate the transactions set forth in the APA and (iii) has taken all company action necessary to authorize and approve the APA and all other documents contemplated thereby, and the consummation by the Debtor of the transactions under the APA.  No consents or approvals, other than those expressly provided for in the APA or this Order, are required for the Debtor to consummate the sale under the APA.

M.     The APA was negotiated and has been and is undertaken by the Debtor and the Purchaser at arm's length without collusion or fraud, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code.  The Purchaser is purchasing the Purchased Assets in good faith and the Purchaser has otherwise proceeded in good faith in connection with these proceedings in that *inter alia*:  (i) the Debtor was free to deal with any other party in connection with the sale of the Purchased Assets; (ii) no common identity of management or ownership interests exists between the Purchaser and the Debtor; (iii) the Purchaser in no way induced or caused the chapter 11 filing by the Debtor; and (vi) all payments to be made by the Purchaser in connection with the APA have been disclosed.  As a result of the foregoing, the Debtor and the Purchaser is entitled to the protections of Section 363(m) of the Bankruptcy Code.

N.     The total consideration provided by the Purchaser for the Purchased Assets is fair and reasonable, and the Purchase Price constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession thereof, or the District of Columbia, for the Purchased Assets, and may not be avoided under Section 363(n) of the Bankruptcy Code or any other section of the Bankruptcy Code or applicable nonbankruptcy law.

O.     The transfer of the Debtor's right, title and interest in the Purchased Assets to the Purchaser will be a legal, valid, enforceable, and effective transfer of the Purchased Assets, and will vest the Purchaser with all of the Debtor's right, title and interest of, in and to the Purchased Assets, free and clear of all claims (as defined in Section 101(5) of the Bankruptcy Code) and interests, including[3] Encumbrances (as defined in the APA), interests, claims of equity security holders (as defined in Section 101(17) of the Bankruptcy Code), security interests, financing statements, mortgages, deeds of trust, liens, including any lien (statutory or otherwise),

---

[3] For avoidance of doubt, as used in this Order, the word "including" means "including without limitation."

judgments, demands, guaranties, options, rights (including rights of first refusal, rights of modification, voting, transfer, receipt of income or other exercise of any attributes of ownership, rights of way and rights of recovery), contractual commitments, pledges, restrictions, excluding restrictions on use, but including, but not limited to, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets and all debts arising in any way in connection with any acts of the Debtor), easements, encumbrances, encroachments, personal injury and other tort claims, covenants, defects, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, offsets, recoupment, orders and decrees of any court, successor liability, transferee liability, products liability, tax liability and other liabilities, debt claims, labor claims, employment claims, pension claims, and claims of any kind or nature whatsoever, claims and interests of any nature or kind of employees, consultants or agents or former employees, former consultants or former agents of the Debtor arising out of the alleged invalidity, unenforceability or irregularity on any grounds of any of their assignments, transfers or waivers to or in favor of the Debtor, whether express or implied or by operation of contact, law or otherwise, of any or all of their right, title and interest in any of the Purchased Assets, whether arising prior to or as a consequence of or subsequent to the commencement of the Chapter 11 Case, whether arising in connection with the transactions authorized by this Order, whether imposed by agreement, understanding, law, equity or otherwise, whether secured or unsecured, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed (collectively, the "Subject Claims and Interests").

P.      The Purchaser would not have entered into the APA and would not consummate the sale, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Purchased Assets to the Purchase and the assignment of the Lease were not free and clear of all liens, claims, interests, and encumbrances, including the Subject Claims and Interests.

Q.     Neither the Debtor nor the Purchaser engaged in any conduct that would cause or permit the APA or the consummation of the transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code, or has otherwise acted in any improper or collusive manner with any person.

R.     The APA and the agreements contemplated thereby were not entered into, and the transactions thereunder are not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtor under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  Neither the Debtor nor the Purchaser has entered into the APA or any agreement contemplated thereby or is consummating the transactions thereunder with any fraudulent or otherwise improper purpose.

S.     The Purchaser is not holding itself out to the public as a continuation of the Debtor and is not an "insider" or "affiliate" of the Debtor, as those terms are defined in the Bankruptcy Code, and no common identity of directors exists between the Purchaser and the Debtor.  To the extent permitted by applicable law, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. The Purchaser's operations shall not be deemed a continuation of the Debtor's business as a result of the acquisition of the Purchased Assets.

T.     The Debtor has demonstrated that it is a good and sufficient exercise of its sound business judgment to assume and assign the Lease to the Purchaser in connection with the consummation of the APA, and the assumption, assignment and sale of the Lease to the Purchaser is in the best interests of the Debtor, its estate, its creditors, and all parties in interest. The Debtor has met all requirements of Section 365(b) of the Bankruptcy Code for approval of the assumption and assignment of the Lease under the APA.

U.     Each and every provision of the Lease or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or

conditioning assignment of the Lease has been satisfied or is otherwise unenforceable under Section 365 of the Bankruptcy Code.

V.      Upon the payment of the allowed cure costs, if any, to the Landlord pursuant further stipulation between the Debtor and the Landlord or further order of this Court, there are no outstanding defaults of the Debtor and its estate under the Assumed Executory Contracts, and no cure amounts are or shall be due or payable. At Closing the Debtor will escrow sufficient sale proceeds to pay Landlord's pre-petition claim (Claim No. 22) in full, plus all rent accruals for the Petition Date through the Closing pending a determination of the allowed cure amount by this Court or resolution between the parties.

W.      The Purchaser has demonstrated adequate assurance of future performance of the Lease within the meaning of Section 365 of the Bankruptcy Code.

X.      Entry into the APA, the agreements contemplated thereby and consummation of the transactions thereunder constitutes a good and sufficient exercise by the Debtor of sound business judgment, and such acts are in the best interests of the Debtor, its estate and creditors, and all parties in interest.  The Court finds that the Debtor has articulated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for a private sale pursuant to Section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization.  Additionally, (a) the sale constitutes the highest and best available offer for the Purchased Assets; (b) the APA and the Closing will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets; (c) there is significant risk of deterioration of the value of the Purchased Assets if the sale is not consummated promptly; and (d) the sale and the Closing will likely provide a greater recovery for the Debtor's creditors than would be provided by any other presently available alternative.

Y.      The Debtor has, to the extent necessary, satisfied the requirements of Section 363(b)(1) of the Bankruptcy Code.   Accordingly, appointment of a consumer privacy ombudsman pursuant to Sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the relief requested in the Motion.

Z.      Time is of the essence in consummating the sale.  In order to maximize the value of the Debtor's assets, it is essential that the sale within the time constraints set forth in the APA. Accordingly, there is a cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d).

**IT IS THEREFORE ORDERED ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Motion is **GRANTED,** as set forth herein.

2.      Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with the General Order M–383, the Bankruptcy Court for the Southern District of New York's *Guidelines for the Conduct of Asset Sales*, Section 102(1) of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9014.

3.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (a) the Transactions are hereby approved and the Debtor and the Purchaser are each hereby authorized and the Debtor and the Purchaser are hereby directed to take any and all actions  necessary or appropriate to: (a) consummate the Transactions and the Closing in accordance with the Motion, the APA, the Assumption Stipulation and this Order; (b) assume and assign the Lease; and (c) perform, consummate, implement and close fully the APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA.  The Debtor is hereby authorized and directed to perform each of its covenants and undertakings as provided in the APA and the agreements contemplated thereby prior to or after the Closing without further order of the Court.

4.      Pursuant to Section 365 of the Bankruptcy Code, notwithstanding any provision of the Lease or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Lease, the Debtor is authorized to assume and to assign the Lease to the Purchaser, which assignment shall take place on and be effective as of the Closing, or as otherwise provided by order of this Court.  The Debtor has met all requirements of Section 365(b) of the Bankruptcy Code for approval of the assumption and assignment of the Lease.

5.      The Closing shall occur on within ten (10) days of entry of this Order unless the Debtor, Purchaser and Landlord all agree in writing upon a later date.  In the event that the Closing occurs after October 31, 2016, and that such Closing date is beyond ten (10) days from entry of this Order, the Purchaser shall be solely responsible for all rent and related charges under the Lease effective November 1, 2016. At the Closing, the Landlord and Purchaser shall enter into a lease assumption agreement (the "Lease Assumption Agreement") consistent with the terms of the Lease and the Assumption Stipulation, respectively.

6.      At the Closing, the Debtor shall segregate and hold in escrow with Debtor's counsel, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, sufficient sale proceeds to pay (a) Landlord's pre-petition claim (Claim No. 22) in full, plus (b) all rent accruals for the period from the Petition Date through the Closing (together, the "Cure Claim Funds") pending a determination of the allowed cure amount by this Court or resolution of the cure amount between the parties (the "Allowed Cure Amount").

7.      The Cure Claim Funds shall be held in escrow and not disbursed without further order of this Court. Pending such disbursement, the Landlord shall be granted a first priority security interest in the Cure Claim Funds to the extent of the Allowed Cure Claim Amount, without the need for filing a UCC-1 financing statement, which lien shall be deemed extinguished, released and satisfied upon payment of the Allowed Cure Claim Amount, with the balance of the Cure Claim Funds, if any, to be paid to the Debtor's estate free and clear of such lien as well as any and all claims of the Landlord.

8.      The assignment of the Lease is subject to (a) Debtor's counsel holding the Cure Claim Funds in escrow, and (b) the Purchaser providing the Landlord additional security deposit funds totaling eight month's Base Rent (as defined in the Lease) as of the Closing, of which two (2) months of such additional deposit may be credited towards Purchaser's rent obligations under the Lease in accordance with Paragraph 1(b) of the Assumption Stipulation. No replacement guaranty shall be required of the Purchaser or any of its principals as a condition to the assignment of the Lease.

9.      Upon payment of the Allowed Cure Amount from the escrowed Cure Claim Funds, all claims of the Landlord against the Debtor, its estate, or any of its principals, officers, shareholders or parties who have executed guaranties in connection with the Lease shall be deemed satisfied, waived, released and expunged in full and the Debtor shall receive the balance of the escrowed Cure Claim Funds, if any.

10.     Without limiting any other provision of this Order, any claims or interests resulting from the rejection of any executory contract or unexpired lease shall not create any claims or interests against the Purchaser or any of the Purchased Assets, and the Transactions shall be free and clear of any such claims or interests.

11.     The Debtor is hereby authorized and directed to consummate, and upon the Closing, shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Debtor's right, title and interest in the Purchased Assets to the Purchaser free and clear of any and all Subject Claims and Interests pursuant to Sections 363 and 365 of the Bankruptcy Code, with such Subject Claims and Interests to attach to the sale proceeds in the same validity, extent and priority as existed with respect to the Purchased Assets immediately prior to the Transactions, subject to any rights, claims and defenses of the Debtor and other parties in interest, and except for the Assumed Liabilities, all such Subject Claims and Interests shall be and hereby are released, terminated and discharged as to the Purchaser and the Purchased Assets.

12.     Except as expressly permitted by the APA or this Order, all persons and entities, including the Debtor, any committee, all debt security holders, all equity security holders, employees, former employees, consultants, former consultants, agents, former agents, shareholders, parties to executory contracts, customers, lenders, trade and other creditors and their respective successors or assigns, and any trustees thereof holding Subject Claims and Interests of any kind or nature whatsoever against or in the Debtor or the Purchased Assets as of the date hereof (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under, out of, in connection with,

or in any way relating to, the Debtor, the Purchased Assets, or the transfer of the Purchased Assets to the Purchaser, hereby are forever  barred, estopped, and permanently enjoined from asserting against Purchaser, its successor, designees or assigns, its property, or the Purchased Assets conveyed in accordance with the APA, such persons' or entities' Subject Claims and Interests, other than for willful misconduct or fraud of the Purchaser.  Except as otherwise provided in the immediately preceding sentence, the sole and exclusive right and remedy available to purported creditors, equity holders, holders of any other Liens or Subject Claims and Interests, and parties in interest shall be a right to assert Liens and Subject Claims and Interests against the Debtor's estate, any guarantor, surety or other third party other than Purchaser that may have obligations thereon, and any collateral other than the Purchased Assets.

13.    Except with respect to enforcing the terms of the APA or this Order, no person shall take any action to prevent, enjoin or otherwise interfere with the consummation of the Transactions, including the transfer to the Purchaser of the Debtor's title to and the right to use and enjoy the Purchased Assets.

14.    The transfer of the Debtor's right, title and interest in the Purchased Assets to the Purchaser pursuant to the Purchase Agreement shall be, and hereby is deemed to be, a legal, valid, enforceable, and effective transfer of the Debtor's right, title and interest in the Purchased Assets, and vests with or will vest in the Purchaser all right, title and interest of the Debtor in the Purchased Assets, free and clear of all Subject Claims and Interests of any kind or nature whatsoever, with any Subject Claims and Interests attaching to the sale proceeds in the same validity, extent and priority as existed with respect to the Purchased Assets immediately prior to the Transactions, subject to any rights, claims and defenses of the Debtor and other parties in interest.

15.    Upon the Closing, and except for the Assumed Liabilities, the Purchaser shall not be liable for any Subject Claims and Interests against or in or obligations of, the Debtor or any of the Debtor's predecessors or affiliates, as a result of having purchased the Purchased Assets. Without limiting the generality of the foregoing, (a) the Purchaser shall have no liability or

obligation to pay wages, bonuses, severance pay, benefits or make any other payment to employees of the Debtor, (b) the Purchaser shall have no liability or obligation in respect of any employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which the Debtor is a party (including liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) the Purchaser shall in no way be deemed a party to or assignee of any such employee agreement, plan or program, and (d) all parties to any such employee agreement, plan or program are enjoined from asserting against the Purchaser any claims or interests arising from or relating to such employee  agreement, plan or program.

16.     As of the Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Debtor's rights and obligations in the Lease and shall have all rights thereunder.

17.     All defaults (monetary and non-monetary) under the Lease through the Closing shall be deemed cured and satisfied by the payment of the Allowed Cure Amount and no other amounts will be owed by the Debtor, its estate or the Purchaser with respect to amounts arising or accruing during, or attributable or related to, the period before Closing with respect to the Lease.  Upon payment of the Allowed Cure Amount, the Landlord shall be forever barred and estopped from asserting a claim against the Debtor, its estate, or the Purchaser or the Purchased Assets that any additional amounts are due or defaults exist under the Lease that arose or accrued during the period before the Closing.  The Debtor's promise pursuant to the terms of the APA to pay the Allowed Cure Amount, and, with respect to the Lease and Purchaser's obligation to provide the additional security deposit as set forth in Paragraph 1(a) of the Assumption Stipulation, shall constitute adequate assurance of future performance under the Lease being assigned to Purchaser within the meaning of Sections 365(b)(1)(C) of the Bankruptcy Code, and the Purchaser has provided adequate assurance of future performance under Section 365(f)(2)(B) of the Bankruptcy Code.

13

18.      Notwithstanding anything herein to the contrary, Purchaser shall not be deemed to have provided adequate assurance of future performance under Section 365(f)(2)(b), and the Lease shall not be assigned to the Purchaser, until the Debtor has escrowed the Cure Claim Funds and the Purchaser has provided the additional security deposit as required under Paragraph 1(a) of the Assumption Stipulation.

19.      Upon assumption of the Lease by the Debtor and assignment to the Purchaser, the Lease, as modified by the Assumption Stipulation and Lease Assumption Agreement, respectively, shall be deemed valid and binding, in full force and effect in accordance with its terms, and shall be assigned and transferred to the Purchaser, notwithstanding any provision in the Lease or other restrictions prohibiting assignment or transfer.

20.      To the extent any executory contract or unexpired lease is assumed and assigned to the Purchaser under the Order, no executory contact or unexpired lease will be assumed and assigned pursuant to this Order until the Closing. Furthermore, other than the Leases, no other contract shall be deemed assumed by and assigned to the Purchaser pursuant to Section 365 of the Bankruptcy Code.

21.      The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Transactions.  The Purchaser is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

22.       For the avoidance of doubt, the Transactions authorized herein shall be of full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which the Debtor is formed or authorized to transact business.

23.      The sale transaction contemplated by the Plan shall neither be deemed a bulk sale under nor subject to any bulk sale laws and/ or notification requirements pursuant to applicable Federal, State or local law governing same including but not limited to those promulgated by any

14

Federal, State or local taxing authority in connection therewith, including, but not limited to, those relating to successor liability for sales tax. The Purchaser shall not be liable for, *inter alia,* any of the Debtor's sales tax obligations.

24.     The consideration provided by the Purchaser for the Purchased Assets under the APA shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Transactions may not be avoided, or costs or damages imposed or awarded, under Section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar state laws.

25.     From and after the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Debtor's right, title and interest in the Purchased Assets and a bill of sale transferring good, valid and marketable title in such Purchased Assets to the Purchaser on the Closing Date pursuant to the terms of the APA, free and clear of all Subject Claims and Interests (other than the Assumed Liabilities.

26.     Any and all Purchased Assets in the possession or control of any person or entity, including any vendor, supplier or employee of the Debtor shall be transferred to the Purchaser free and clear of all Subject Claims and Interests and shall be delivered at the time of Closing (or such other time as provided in the APA) to the Purchaser.

27.     Upon the Closing, all holders of Subject Claims and Interests against the Debtor or the Purchased Assets are permanently and forever barred, restrained and enjoined from asserting any Subject Claims and Interests or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against the Purchaser or the Purchased Assets on account of any of the Subject Claims and Interests. The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor and/or the Debtor's estate, there is not substantial continuity between the Purchaser and the Debtor, there is no continuity of enterprise between the Debtor and the Purchaser, the Purchaser is not a mere

continuation of the Debtor or the Debtor's estate, and the Purchaser does not constitute a successor to the Debtor or the Debtor's estate including for purposes of any liabilities, debts or obligations of or required to be paid by the Debtor for any tax, pension, labor, employment, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.  The Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of Closing to the extent permitted by applicable law.   The Purchaser's operations shall not be deemed a continuation of the Debtor's business as a result of the acquisition of the Purchased Assets.

28.     This Order (a) is and shall be effective as a determination that all Subject Claims and Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and shall authorize all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Purchaser.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Subject Claims and Interests against the Purchased Assets from their records, official and otherwise. Nothing in this order shall impair or affect and Subject Claims and Interests in or against any property that is not a Purchased Asset.

29.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Transactions.

16

30.     To the extent this Order is inconsistent with any prior order or pleading in this Chapter 11 Case, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the APA (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

31.     This Order shall not be modified by any chapter 11 plan confirmed in this Chapter 11 Case or subsequent order of this Court unless expressly consented to in writing by the Purchaser, the Debtor, the Landlord, and the Office of the United States Trustee, and the terms thereof shall remain in full force in effect in the event of a dismissal of the Debtor's bankruptcy case.

32.     To the extent that the Debtor and the Purchaser agree to any amendments or modifications of the APA prior to the Closing (other than non-material changes to any schedule), such changes shall be presented to the Court for approval, on prior notice to (i) Office of the United States Trustee, (ii) the Landlord and (iii) any parties filing a notice of appearance. The foregoing parties shall receive notice of any non-material schedule changes at least one (1) business day prior to Closing.

33.     This Order and the APA shall be binding in all respects upon all creditors and interest holders of the Debtor (whether known or unknown), the Landlord, all successors and assigns of the Debtor and its affiliates and subsidiaries, any committee and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtor's Chapter 11 Case or upon a conversion of the Debtor's Chapter 11 Case to chapter 7 under the Bankruptcy Code, and the APA shall not be subject to rejection or avoidance under any circumstances.

34.     The failure specifically to include or make reference to any particular provisions of the APA or any ancillary agreement contemplated thereby in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA and the ancillary agreements contemplated thereby are authorized and approved in their entirety.

35.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order. Notwithstanding any provision in the Bankruptcy Rules or the

Local Bankruptcy Rules to the contrary, the terms of this Order shall be immediately effective and enforceable upon its entry.

36.     The provisions of this Order are non-severable and mutually dependent.

37.     The Purchaser is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the Transactions contemplated by the APA based upon any arrangement made by or on behalf of the Debtor.

38.     The Debtor is hereby authorized and empowered to apply to any court, tribunal, regulatory, administrative or other governmental body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

39.     Notwithstanding anything to the contrary in the APA or this or any other Order, the Debtor shall retain true copies of all of the Debtor's books, files, and records, including but not limited to all books, files, and records being sold to Purchaser pursuant to the APA, until the later to occur of (a) the closing of the Chapter 11 Case (or, in the event the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, the closing of such case) and (b) the completion of any adversary proceeding or other action commenced by the Debtor, any successor thereto (such as a chapter 11 trustee), including any appeals related thereto, provided that the Debtor (or any trustee appointed in the Chapter 11 Case) shall give the Office of the U.S. Trustee not less than twenty-one days' notice of its intent to dispose of or destroy any of Debtor's books, files, and records.

Dated: New York, New York
       October 21, 2016

                            _s/ Mary Kay Vyskocil_
                            Honorable Mary Kay Vyskocil
                            United States Bankruptcy Judge